UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEENA TILLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 10-cv-04202 |
| TARO PHARMACEUTICAL | ) |
| INDUSTRIES LTD. and TARO | ) Judge John W. Darrah |
| PHARMACEUTICALS U.S.A., INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sheena Tillman ("Tillman"), has filed an Amended Complaint against Defendants, Taro Pharmaceutical Industries Ltd. and Taro Pharmaceuticals U.S.A., Inc. (collectively, "Taro"), alleging: strict product liability under a failure to warn theory (Count I); strict product liability pursuant to the Second Restatement of Torts § 402(a) (Count II); intentional infliction of emotional distress (Count III); negligent infliction of emotional distress (Count IV); common-law fraud (Count V); negligence (Count VI); negligent misrepresentation (Count VII); fraudulent misrepresentation (Count VIII); breach of express warranty (Count IX); breach of implied warranty of merchantability (Count X(A)); and breach of implied warranty of fitness (Count X(B)). Presently pending before the Court is Taro's Motion to Dismiss Tillman's Amended Complaint.

## BACKGROUND

The following facts are taken from Tillman's First Amended Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

Taro markets, sells, and distributes Carbamazepine. (Am. Compl. ¶¶ 5, 6.) Carbamazepine is a prescription anticonvulsant that is used as a mood stabilizer for bipolar disease. (*Id.* ¶ 10.) After being prescribed Carbamazepine on December 7, 2007, Tillman developed symptoms of a sore throat, fever, cough, and macular rash. (*Id.* ¶ 19.) Tillman went to the Emergency Room at Loyola University Hospital on December 17, 2007 for her symptoms and was subsequently discharged. (*Id.*) However, Tillman's rash worsened, and she was admitted to Loyola University Medical Center's burn unit for treatment of her injuries on December 21, 2007. (*Id.*) Tillman does not set forth facts regarding her diagnosis. Tillman claims she "suffered severe and permanent injuries" and "suffered physical impairment and disfigurement." (*Id.* ¶ 70.)

Taro has sold the prescription drug Carbamazepine in the United States since 1996 in the form of 200 mg tablets, among other forms of the drug. (*Id.* ¶¶ 10, 12.) Taro holds Abbreviated New Drug Application ("ANDA") 074649, which allows them to market and distribute a generic formulation of Carbamazepine, National Drug Code Number 516720-4005-01, which is the formulation that was prescribed to Tillman and that is at issue in this case. (*Id.* ¶ 22.) Taro promoted Carbamazepine to the medical community and patients through medical journal advertisements, mass mailings, direct communications from Taro's sales force, package inserts, physicians desk reference, monographs, and patient brochures. (*Id.* ¶ 15.) The principal label for Carbamazepine, known as the "Package Insert," was developed by Taro and was included with

2

all prescription drug products and samples. (*Id.* ¶ 13.)

Tillman alleges that the materials distributed by Taro minimized the "true and accurate risk of various severe cutaneous reactions, including Stevens-Johnson Syndrome" ("SJS") and toxic epidermal necrolysis ("TENS"), when the risk was actually significantly greater than stated." (*Id.* ¶¶ 16, 23.) Tillman alleges that Taro did not adequately warn her and the medical community about the actual prevalence of known side effects of Carbamazepine and that physicians, including Tillman's physician, were not aware of the seriousness of Carbamazepine's risks. (*Id.* ¶¶ 36, 41.) Instead, Tillman alleges, Taro advertised that Carbamazepine was safe and that any permanent or severe skin reactions were infrequent. (*Id.* ¶ 40.) Thus, Tillman and her physician believed that severe skin reactions resulting from Carbamazepine were infrequent. (*Id.* ¶ 42.)

On December 22, 2009, Tillman filed a complaint in Cook County Circuit Court. (Dkt. at 1). On July 7, 2010, Taro removed the case to this Court based on diversity jurisdiction. (*Id.*) Tillman filed her Amended Complaint on February 3, 2011. (Dkt. at 24.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a

complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*Iqbal*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

## ANALYSIS

### Rule 8

Taro argues that Tillman's Amended Complaint is not sufficient because it is not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1). Taro contends that the "core deficiency" of Tillman's Amended Complaint is that it fails to *plainly* state a claim. (Mot. at 2

(emphasis in original).) However, apart from conclusory arguments that Tillman's Amended Complaint is "obtuse," "disorganized" and "internally inconsistent," Taro fails to point to any specific examples of how Tillman's Amended Complaint does not comply with Rule 8. Taro cites *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771 (7th Cir. 1994) (*Vicom*), in which the court dismissed a 119-page, 385-paragraph complaint because it failed to comply with Rule 8. *Id.* at 775. The court in *Vicom* explained that a complaint has to have "intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Id.* (citing *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993)).

Here, Taro has not demonstrated that Tillman's Amended Complaint is unintelligible or that it does not provide them with fair notice of Tillman's claims. Therefore, Taro's Motion to Dismiss on the basis of Rule 8(d) is denied.

*Counts I and II: Strict Product Liability:*
*Failure to Warn and Second Restatement of Torts § 402A*

Tillman argues that the Carbamazepine manufactured by Taro was defectively designed and inadequately warned foreseeable consumers of the extent of possible side effects. (Am. Compl. ¶¶ 91, 94.) To prevail under a theory of strict product liability under Illinois law, a plaintiff must prove: "[1] the injury resulted from a condition of the product, [2] that the condition was unreasonably dangerous, and [3] that the condition existed at the time the product left the manufacturer's control." *Faucett v. Ingersoll-Rand Min. & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992) (citation omitted) (*Faucett*). "In a strict liability case based on a failure to warn in Illinois, '"the plaintiff must allege and prove that defendant knew or should have known of the danger and this is tested on knowledge existing at the time of production.'" *Giles v. Wyeth, Inc.*, 556 F.3d 596, 600 (7th Cir. 2009) (quoting *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 344 (Ill. 1990)).

5

A plaintiff may proceed under two separate theories to prove that a product is "unreasonably dangerous": (1) existence of a design or manufacturing defect or (2) failure of the manufacturer to adequately warn consumers of the product's dangers. *Lamkin v. Tower*, 138 Ill.2d 510, 528 (1990) (*Lamkin*). Tillman alleges both that there was a design defect in Carbamazepine and that Taro failed to warn about the drug's side effects. (Am. Compl. ¶¶ 86, 90.)

First, under a design defect theory, a plaintiff can either "(1) . . . introduc[e] evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) . . . introduc[e] evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Lamkin*, 138 Ill.2d at 529. Tillman bears the burden of proving that the Carbamazepine was defective at the time it left the hands of Taro and has to produce evidence to support that conclusion. Restatement (Second) of Torts § 402A (cmt. g).

Second, a product that requires a warning can be considered defective at the time it left the seller if the warning is not adequate. (*Id.*) If a product is considered unreasonably dangerous and that dangerousness is not generally known, then the seller "is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger." (*Id.* cmt. J.)

Tillman has failed to plead a claim of strict liability based on either a theory of design defect or a failure to warn. Tillman includes only formulaic recitations of the elements of her cause of action. (*See* Am. Compl. ¶ 91 (stating that Carbamazepine, due to the high risk of SJS,

was unreasonably dangerous and that an ordinary customer would not expect the danger); ¶ 16 (claiming that Taro did not "report the true and accurate risk of [SJS] to the Plaintiff's physician, the medical community and the Plaintiff and regularly represented in its advertising and promotional messages to said individuals that the risk of [SJS] and severe cutaneous reactions associated with exposure to Carbamazepine was minimal when in fact it was significantly greater").)

Tillman fails to allege specific facts supporting her allegation that Carbamazepine was defective in design or formulation when it left the hands of the manufacturer. (*Cf.* Am. Compl. ¶ 86 (stating that Taro did not perform adequate testing on Carbamazepine before putting it in the market); ¶ 87 (alleging that Carbamazepine was defective in design because, when the Carbamazepine left Taro's hands, "the foreseeable risks exceeded the benefits associated with the design and formulation of the drug"); ¶¶ 90, 91 (claiming in the alternative that Carbamazepine was unreasonably dangerous because it was "more dangerous than alternative drugs available for the treatment of epilepsy or bi-polar mania" and that there were "safer alternative medications" available).)

Tillman has not met her pleading burden as to either of her strict-liability claims. Accordingly, Taro's Motion to Dismiss Counts I and II is granted without prejudice.

*Count III: Intentional Infliction of Emotional Distress*

Under Illinois law, the elements of a claim for intentional infliction of emotional distress are as follows: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697,

702 (7th Cir. 2003) (citations omitted) (*Harriston*). In order for conduct to be "extreme and outrageous," the conduct has to go "beyond the bounds of human decency" and "defendant's conduct must be such that recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Lewis v. School Dist. No. 70*, 523 F.3d 730, 747 (7th Cir. 2008) (citations omitted).

In the present case, Tillman alleges that Taro marketed Carbamazepine and did not disclose potentially serious side effects to her or the medical community. (Am. Compl. ¶ 100.) However, Tillman includes no allegations demonstrating that any conduct rises to the level of being extreme or outrageous. *See Harriston*, 922 F.3d at 703 (holding that allegations that plaintiff's phone calls were monitored with an eavesdropping device; she was forced out of her managerial position; excluded from office activities; and that her car was vandalized on her employer's property were not enough to constitute outrageous conduct by her employer).

Tillman's reliance on *Reilly v. Wyeth*, 876 N.E.2d 740 (Ill. App. Ct. 2007) (*Rielly*) is misplaced. In *Reilly*, the plaintiffs claimed that a drug manufacturer knew that their vaccine contained a mercury-based preservative that caused autism but continued to market and distribute the vaccine and represent that the vaccine was safe for children. *Id.* at 756. The court held that using the mercury-based preservative did **not** constitute extreme and outrageous conduct. *Id.*

Tillman alleges that Taro "knew that [she] would suffer mental distress and anxiety upon learning that Carbamazepine caused her severe cutaneous reactions," but Tillman does not plead any facts to support this claim. (Am. Compl. ¶ 101.) Tillman also alleges that she will "continue to sustain emotional and mental distress and anxiety" but again fails to provide factual support. (*Id.* ¶ 102.) "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Taro's Motion to Dismiss Count III is granted without prejudice.

*Count VI: Negligence*

"To establish a valid claim for negligence in the state of Illinois, a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974)). The Court has to look to whether there is more than a "mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1950.

Tillman alleges that Taro owed her a duty to "use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Carbamazepine." (Am. Compl. ¶ 114). As a matter of law, however, Taro does not owe Tillman any such duty. Tillman argues that a seller has a duty to warn consumers of a product's dangers and that the breach of such a duty can give rise to a negligence claim in addition to a strict-liability claim. However, under the "learned intermediary" doctrine, prescription drug manufacturers have a duty to warn physicians of any known dangers of their drug and the physicians, in turn, have a duty to convey warnings to patients. *Kirk v. Michael Reese Hosp. and Medical Center*, 513 N.E.2d 387, 393 (Ill. 1987) (*Kirk*). But the manufacturer's duty to warn "is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." *Kirk*, 513 N.E.2d at 392 (citations omitted).

Furthermore, although it is difficult to discern from Tillman's Amended Complaint or brief, to the extent she intended to bring such a claim, Tillman also has not adequately pled that Taro breached any duty to warn her physician of Carbamazepine's purported dangers.

9

Therefore, Taro's Motion to Dismiss Count VI is granted without prejudice.

*Count IV: Negligent Infliction of Emotional Distress*

Tillman alleges that she was a direct victim of negligent infliction of emotional distress (NIED). (*See* Am. Compl. ¶ 107.) Illinois follows the "impact rule," under which "a direct victim may not recover for emotional distress suffered as a result of the defendant's alleged negligence unless the emotional distress 'was accompanied by a contemporaneous physical injury to or impact on the plaintiff.'" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (*Lewis*) (citing *Rickey v. Chicago Transit Authority*, 457 N.E.2d 1, 2 (Ill. 1983)). In order to prove a claim of negligent infliction of emotional distress, a plaintiff proceeding under a direct victim theory must meet the requirements for a negligence claim and "demonstrate a defendant's duty, as well as a breach that proximately caused the claimant an injury." *Lewis*, 561 F.3d at 703. As discussed above, Tillman has not sufficiently pled that Taro owed Tillman any duty to warn of any purported effects of Carbamazepine. Thus, Taro's Motion to Dismiss the NIED claim (Count IV) is granted without prejudice.

*Count VII: Negligent Misrepresentation*

In order for Tillman to plead a negligent misrepresentation claim, she must allege: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833-34 (7th Cir. 2007) (*Tricontinental*) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.3d 327, 334-35 (Ill. 2006)). Negligent misrepresentation is not governed by Rule 9(b).

*Tricontinental*, 475 F.3d at 833.

Here, Tillman's allegations regarding her negligent-misrepresentation claim are simply a rote recitation of the elements of a cause of action. Tillman's allegations that Taro "negligently misrepresented material facts"; that she and doctors "justifiably relied on [Taro's] misrepresentations"; and that the "negligent misrepresentations proximately caused Plaintiff's injuries and monetary losses" are insufficient to adequately state a claim. (Am. Compl. ¶ 118.) Taro's Motion to Dismiss Count VII is granted without prejudice.

### Counts V and VIII: Common-Law Fraud and Fraudulent Misrepresentation

As a threshold argument, Taro argues that Tillman's fraud claims are time barred. Tillman argues that fraudulent concealment tolls the statute of limitations as to her fraud claims but sets forth no argument with respect to her remaining claims. Tillman's fraud claim, however, is timely. The statute of limitations for fraud claims is five years. 735 ILCS 5/13-205. Tillman alleges she suffered the last of her injuries on December 21, 2007. Therefore, Tillman's fraud claim, which was filed on December 22, 2009, is within the statute of limitations.[1]

Regarding the merits of Tillman's claim, in order to state a claim for fraud under Illinois law, Tillman has to prove five elements: "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Soules v. General Motors Corp.*, 402 N.E. 2d 599, 601 (Ill. 1980).

Under Rule 9(b), the circumstances constituting fraud must be stated "with particularity." Fed. R. Civ. P. 9(b). In order to plead fraud with particularity, a plaintiff must allege "the

---

[1] Taro fails to present an argument that any of Tillman's other claims are time barred. Thus, the statute of limitations as to Tillman's other claims is not addressed.

11

identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (citations omitted).

Taro argues that Tillman fails to allege "what was actually represented, and when, where, how and by whom it was represented to Plaintiff or anyone else." (Mot. at 4.) On the other hand, Tillman argues that she has met the requirements of pleading a fraud claim because, here, Taro is in a better position to determine the specific details of the claims themselves. The purpose of pleading fraud with particularity is so that defendants are "apprise[d] . . . of what [they] are called upon to answer." *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 593 (Ill. 1989). Tillman argues she has satisfied the particularity requirement. However, Tillman's reliance on *Bryson v. News Am. Publ'ns., Inc.*, 672 N.E.2d 1207 (Ill. 1996) (*Bryson*) is misplaced. *Bryson* did not involve a fraud claim, which is subject to the heightened pleading standard of Rule 9(b), but rather a claim for punitive damages. *Id.* at 1225. Notably, *Bryson* cites multiple cases as supporting authority, but none involve a claim of fraud. *Id.*

Here, Tillman's fraud allegations are simply a recitation of the requisite elements of a cause of action. For example, Tillman alleges that Taro "falsely and fraudulently represented" that Carbamazepine was safe and provided "misleading information" about Carbamazepine's risks. (Am. Compl. ¶¶ 40, 74.) Tillman furthermore asserts that Defendants made "misrepresentations" regarding Carbamazepine. Tillman, however, fails to identify when or how these alleged false representations were made. (*Id.* ¶¶ 110, 120.) Tillman also fails to plead that Taro was aware that any information that they were presenting to the medical community or to others was not correct. (Mot. at 8-9.)

12

Tillman has failed to meet her burden of pleading fraud with particularity pursuant to Rule 9(b). Thus, Taro's Motion to Dismiss Tillman's common-law fraud and fraudulent misrepresentation claims (Counts V and VIII) is granted without prejudice.

*Count IX: Breach of an Express Warranty*

An express warranty can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057 (Ill. 2007) (citations omitted). Courts require that plaintiffs prove that "the warrantor gave a warranty as an inducement to make the purchase and the purchaser actually relied upon the warranty." *Regopoulos v. Waukegan Part.*, 608 N.E.2d 457, 461 (Ill. App. Ct. 1st Dist. 1992). For an express warranty, a plaintiff must prove "that [the good] was defective and that the defect(s) existed when the goods left the seller's control." *Alvarez v. Am. Isuzu Motors*, 749 N.E.2d 16, 22 (Ill. App. Ct. 1st Dist. 2001) (citations omitted). In her Amended Complaint, Tillman has pled no facts whatsoever that could be construed as establishing an express warranty by Taro. Taro's Motion to Dismiss Count IX is granted without prejudice.

*Count X:*
*Implied Warranty of Merchantability and Implied Warranty of Fitness*

Tillman alleges that Taro breached two separate implied warranties: the warranty of merchantability and the warranty of fitness. To prove an implied warranty of merchantability in Illinois, a plaintiff must prove that: "(1) [the product was] not merchantable at the time of sale; (2) plaintiff suffered damages as a result of the defective [product]; and (3) plaintiff gave [defendant] notice of the defect." *Munch v. Sears, Roebuck and Co.*, Nos. 06 C 7023, 07 C 412, 2007 WL 2461660, *4 (N.D. Ill. Aug. 27, 2007). An implied warranty of fitness arises when "a seller knows of the particular purpose for which goods are required and the buyer relies on the

seller's skill or judgment in selecting the goods." *Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*, 440 N.E.2d 153, 156 (Ill. App. Ct. 1982) (citations omitted).

Tillman's claim is inadequately pled for several reasons. Tillman fails to plead that Carbamazepine was not merchantable. Although she states that she purchased Carbamazepine "for the ordinary purpose for which consumers use it" and that it was "not fit for the ordinary purpose for which such drugs are used," she fails to specify for what purpose she consumed Carbamazepine. (Am. Compl. ¶ 125.) Tillman also fails to plead that she gave Taro notice of Carbamazepine's alleged defect. Tillman's Amended Complaint contains no allegations that she had any direct communication with Taro regarding the Carbamazepine. Tillman has not met her burden of pleading an implied warranty of merchantability or an implied warranty of fitness. Thus, Taro's Motion to Dismiss Count X(A) and Count X(B) is granted without prejudice.

Given that Tillman's claims have been dismissed without prejudice, Taro's request that the Court strike Tillman's requests for punitive damages and attorney's fees is moot as there are no claims left standing upon which Tillman may base such requests.

## CONCLUSION

For the reasons set forth above, Taro's Motion to Dismiss is granted. Tillman's Amended Complaint is dismissed in its entirety without prejudice to re-file if she can do so, pursuant to the requirements of Fed. R. Civ. P. 11, within 28 days of the date of entry of this Order.

Date: 8-17-11

JOHN W. DARRAH
United States District Court Judge

14